**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KIM PINDAK, JOHN HALL, McARTHUR HUBBARD, LORENZO KING, ROBERT RANDOL, RONALD PORTIS, ROGER YOUNG, WILLIAM JOHNSON, and BONITA FRANKS, individually and on behalf of a class of all others similarly situated;<br><br>Plaintiffs,<br>v. | ) | No. 12 C 4005<br>Judge<br>Magistrate Judge |
| CITY OF CHICAGO, a municipal corporation; Chicago Police Officers THERESA NAZARIO, Star 16221; JOHN BAKOPOULUS, Star 12689; LUCAS WISE, Star 15647; and UNKNOWN POLICE OFFICERS, (individually and in their official capacities)<br><br>Defendants. | ) | JURY TRIAL DEMANDED |

**COMPLAINT FOR CIVIL RIGHTS VIOLATIONS,**
**DECLARATORY JUDGMENT AND OTHER INJUNCTIVE RELIEF**

Plaintiffs KIM PINDAK, JOHN HALL, McARTHUR HUBBARD, LORENZO KING, ROBERT RANDOL, RONALD PORTIS, ROGER YOUNG, WILLIAM JOHNSON, and BONITA FRANKS, by their undersigned attorneys, complain against the Defendants, CITY OF CHICAGO, a municipal corporation; and Chicago Police Officers THERESA NAZARIO, Star 16221; JOHN BAKOPOULUS, Star 12689; LUCAS WISE, Star 15647; and UNKNOWN POLICE OFFICERS as follows:

**Nature of the Case**

1. This is a civil rights action in which named Plaintiffs on behalf of themselves and a class of similarly situated individuals seek relief for Defendants' violations of their rights, privileges and immunities secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983, and the First Amendment to the United States Constitution.

2. The Defendants in this action, the City of Chicago ("City"), Officer Theresa Nazario, Officer John Bakopoulus, Officer Lucas Wise and Unknown Police Officers are presently engaged in a constitutionally abusive practice of illegally removing panhandlers from Michigan Avenue by fraudulently telling them that it is illegal to panhandle there and threatening to arrest them if they do not move. The police rarely, if ever, arrest panhandlers for the purportedly illegal act of panhandling on Michigan Avenue because the police know that panhandling is protected First Amendment speech and, as such, it is perfectly legal to panhandle on the public sidewalks throughout Chicago, including on Michigan Avenue. An arrest for panhandling on Michigan Avenue would be a false, malicious and unconstitutional arrest and would subject the City to potential liability. Moreover, an arrest demands the creation of an arrest report, which creates a detectable paper trail.

3. The policy and practice at issue here makes detection more difficult because it involves the Chicago Police Department ("CPD") removing panhandlers from Michigan Avenue, primarily between Oak Street and Erie Street (also known as the Magnificent Mile) solely through verbal intimidation, threats, and harassment. The CPD has a widespread practice of telling individuals who panhandle on Michigan Avenue such things as, "On Michigan Avenue, it's illegal to panhandle;" "If I see you here again, I will lock you up;" "Get lost;" "Find another spot;" "We're going to be out here all summer, so the next time I see you are out here—the next time and every time—I am locking you up;" "We are on a mission, you understand? It's a mission for you to be on your way and never come back;" and "Leave or go to jail." In other words, the police are presently engaged in a widespread, systematic practice to willfully lie to and deceive some of its citizens about their constitutional rights and intimidate them away, by threat of arrest, from lawfully exercising their constitutional rights.

4. The City's objective here is not difficult to fathom: it seeks to whitewash parts of Michigan Avenue of people who beg in order to "beautify" the Magnificent Mile by segmenting the City's public sidewalks into those available to the rich and those available to the poor. In its

efforts to whitewash the Magnificent Mile of panhandlers, the City is elevating mere aesthetics over constitutional freedoms, embracing short-term, bullying tactics in the name of commerce, and sacrificing the rule of law and equal treatment under it in concession to our society's over-developed sense of entitlement to be free from the smallest discomforts, including the presence on select public sidewalks of individuals who panhandle.

5. As a direct and proximate result of the Defendants' policies and practices, at least hundreds, perhaps thousands, of people have been subjected to unconstitutional interference with their First Amendment right to panhandle on North Michigan Avenue between Oak Street and Erie Street over the past two years. Indeed, many of the persons who have been victimized by the CPD's interference with their First Amendment rights have repeatedly been victimized by the City's unlawful practices.

6. The named Plaintiffs seek to represent a certified class for the purpose of obtaining injunctive and declaratory relief only. The named Plaintiffs seek a class-wide judgment declaring that the policies, practices and/or customs described herein violate the First Amendment and a class-wide injunction enjoining Defendants from continuing such policies, practices and/or customs. In addition, the named Plaintiffs seek compensatory and punitive damages for themselves. All Plaintiffs seek an award of attorneys' fees and such other relief as this Court deems equitable and just.

7. In this action, Plaintiffs challenge the policies and practices of the City of Chicago of (1) prohibiting panhandling on the public sidewalks on Michigan Ave., in violation of the First Amendment of the United States Constitution; (2) consistently, systematically and fraudulently lying to those engaged in peaceable panhandling by telling them that panhandling is illegal on Michigan Ave., also in violation of the First Amendment of the United States Constitution; (3) failing to adequately train the Chicago Police regarding the legal right of individuals to peacefully panhandle on Michigan Ave., amounting to deliberate indifference to their First Amendment rights under the United States Constitution; and (4) failing to adequately monitor and intervene to stop the consistent and systematic interference with panhandlers' right to panhandle, amounting to deliberate indifference to their First Amendment rights under the United States Constitution.

**Jurisdiction and Venue**

8. Jurisdiction is proper in this court pursuant to 28 U.S.C. §§ 1331 and 2201.

9. Pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure, this Court has jurisdiction to declare the rights of the parties and to grant all further relief deemed necessary and proper. Rule 65 of the Federal Rules of Civil Procedure authorizes injunctive relief. This Court has authority to award costs and attorneys' fees under 42 U.S.C. §§ 1988 and 3613(c)(2).

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as all the events giving rise to the claims asserted herein occurred in Cook County.

**Parties**

11. Plaintiffs Kim Pindak, 59; John Hall, 52; McArthur Hubbard, 48; Lorenzo King, 64; Robert Randol, 61; Ronald Portis, 75; Roger Young, 50; William Johnson, 56; and Bonita Franks, 60; are all citizens of the United States and at all times relevant hereto were residents of the City of Chicago, County of Cook, State of Illinois. Each of the Plaintiffs panhandles regularly for money from pedestrians on the public sidewalks as a way to help support him or herself. Unless any of their financial circumstances change, they all seek in the future to panhandle on the public sidewalks on Michigan Avenue between Oak Street and Erie Street.

12. Defendant City of Chicago is a municipal corporation, a body politic, existing under and by virtue of the laws of the State of Illinois.

13. Defendant Theresa Nazario, Star 16221, is, and/or was, at all times relevant herein, an officer, employee and agent of the Chicago Police Department, an agency of the City. At all relevant times, Nazario was acting in the course and scope of her employment and under color of state law, ordinance or regulation. Nazario is sued in her official and individual capacity.

14. Defendant John Bakopoulus, Star 12689, is, and/or was, at all times relevant herein, an officer, employee and agent of the Chicago Police Department, an agency of the City. At all relevant times, Bakopoulus was acting in the course and scope of his employment and under color of state law, ordinance or regulation. Bakopoulus is sued in his official and individual capacity.

15. Defendant Lucas Wise, Star 15647, is, and/or was, at all times relevant herein, an officer, employee and agent of the Chicago Police Department, an agency of the City. At all

relevant times, Wise was acting in the course and scope of his employment and under color of state law, ordinance or regulation. Wise is sued in his official and individual capacity.

## Factual Allegations

**Kim Pindak**

16. Plaintiff Kim Pindak panhandles five to seven days a week at various locations in Chicago. He stands on the public sidewalks and typically carries a cup in his hand and says to passersby, “could you spare any food or change?” He often attempts to panhandle on Michigan Avenue, in particular at the northeast corner of Delaware Street and Michigan Avenue, where the police routinely tell him that panhandling is illegal and that he will be arrested if he does not leave. Whenever the police tell Plaintiff Pindak to leave, he immediately leaves and moves away from Michigan Avenue.

17. Over the past year, Plaintiff Pindak has been threatened with arrest on Michigan Avenue and told that panhandling is illegal there by at least four different police officers on at least a dozen different occasions. On several occasions, the cops have identified their sergeants as being behind the Michigan Avenue panhandling prohibition, telling Pindak that “the sergeant says panhandling is illegal.”

18. On at least one occasion in the past year, Defendant Bakopoulus, Star 12689, also threatened to confiscate Pindak’s money, calling it “contraband.” Defendant Bakopoulus knowingly made this false statement.

19. Plaintiff Pindak's most recent encounter with the police while panhandling on Michigan Avenue occurred on April 21, 2012, at approximately 10:30 a.m. At that time, he was panhandling at the northeast corner of Delaware Street and Michigan Avenue, when Defendant Nazario, Star 16221, approached him and told him, “On Michigan Avenue, it’s illegal to panhandle.” She explained that “they” made panhandling illegal on Michigan Avenue because “it is a tourist spot” and because “there has been too many thefts [here].” When Plaintiff Pindak asked her where he could panhandle, she explained that “anything [on Michigan Avenue] south of Oak Street up to Chicago Avenue, you really can't [panhandle],” but that he could go “south of the river [to panhandle] ... but right here [i.e., Delaware Street and Michigan Avenue], no.” Defendant Nazario knowingly made these false statements. After that, Plaintiff Pindak left Michigan Avenue to panhandle elsewhere.

**John Hall**

20. Plaintiff John Hall panhandles seven days a week in downtown Chicago. When he panhandles, he carries a sign that says, "Homeless/ With Nothing and No One/ Please Help/ We're all God's Children!/ God Bless." On weekends, Hall panhandles on Michigan Avenue at two locations—the corner of Wacker and Michigan and the corner of Ontario and Michigan. Almost every time he panhandles at the corner of Ontario Street and Michigan Avenue, he is told by police officers that he is not allowed to panhandle on Michigan Avenue.

21. Defendant Bakopoulus has told Plaintiff Hall, "You can't do that on Michigan. If I see you again, I will lock you up." Defendant Bakopoulus knowingly made this false statement. Plaintiff Hall always leaves when he is threatened with arrest.

22. Over the past year, two officers in particular have harassed Defendant Hall, one is Defendant Bakopoulus, and the other's identity is currently unknown. This unknown Defendant is a medium-height, thin, African-American officer. Plaintiff Hall does not know the officer's name but could identify him. On five or more occasions over the past year, these two officers and others have written up so-called contact cards on Plaintiff Hall for panhandling.

**McArthur Hubbard**

23. Plaintiff McArthur Hubbard panhandles seven days a week at various locations in Chicago. He sometimes panhandles on the public sidewalk at the northeast corner of Pearson Street and Michigan Avenue, and whenever he does, he has been told by Chicago police officers that he cannot panhandle there. On several occasions, Defendant Bakopoulus has told him, "you can't do that here. I will take you to jail, and I will take your money, and you can tell that to the judge." Defendant Bakopoulus knowingly made these false statements.

24. The most recent incident occurred on Saturday, May 12, 2012, at approximately 1:40 p.m. At that time, Plaintiff Hubbard was panhandling on the public sidewalk at the northeast corner of Pearson and Michigan when he was approached by Defendant Wise and two officers whose identities are currently unknown. One unknown officer (Jane Doe) is a black, female of average height, and the other unknown officer (John Doe) is a tall, white male of average build. John Doe told Hubbard that he cannot panhandle on the public sidewalks on Michigan Avenue, saying, "you can't panhandle over here." John Doe knowingly made this false statement. In addition, Defendant Wise threatened to arrest Hubbard whenever he did panhandle on Michigan Avenue, telling him, "We're going to be out here all summer, so the next time I see

you are out here—the next time and every time—I am locking you up." Defendant Jane Doe wrote up a contact card on the encounter and ended the encounter by warning Hubbard, "We are on a mission, you understand? It's a mission for you to be on your way and never come back."

**Lorenzo King**

25. Plaintiff Lorenzo King panhandles on a regular basis in various locations in downtown Chicago, including on Michigan Avenue between Delaware Street and Erie Street. He is unable to walk and is confined to a wheelchair, since both his feet have been amputated. When he panhandles, he sits in a wheelchair with a cup in his lap. When he panhandles on Michigan Avenue between Delaware Street and Erie Street, he is routinely told he cannot panhandle there. Dozens of times over the past year, numerous Chicago police officers have kicked him off of Michigan Avenue, telling him "find another spot." They have also threatened to arrest him for his panhandling activities. They have also threatened to put his wheelchair in the alley. They have also threatened to take his money. He does not know the names of these officers, but he could identify them if he saw them again. As a result of these tactics, King is reluctant to panhandle on Michigan Avenue and instead opts to panhandle on side streets around Michigan Avenue.

**Robert Randol**

26. Plaintiff Robert Randol peacefully panhandles in various locations in Chicago, but he will not go to Michigan Avenue to panhandle for fear that he will be arrested if he does. In January or February of this year, he was panhandling near Erie Street on Michigan Avenue, when a white, male Chicago police officer approached him and told him he could not panhandle on Michigan Avenue. The police officer filled out a contact card on him and told him "to get lost" and that if he catches him again on Michigan Avenue he would lock him up.

**Ronald Portis**

27. Plaintiff Portis peacefully panhandles seven days a week in downtown Chicago, including on the public sidewalk in front of the Fourth Presbyterian Church on the 800 block of North Michigan Avenue. Over the past year, he has been told by various police officers numerous times that panhandling is illegal on Michigan Avenue. They have told him, "No panhandling. You have to get off Michigan Avenue" or "Leave or go to jail." Portis always leaves when the police tell him to leave and/or threaten to take him to jail, typically moving to Rush Street and Walton to continue his panhandling activities.

**Roger Young**

28. Plaintiff Roger Young panhandles seven days a week in downtown Chicago, including on Michigan Avenue between Delaware and Superior. In particular, Plaintiff Young prefers to panhandle between Erie Street and Ontario Street on Michigan Avenue. When he panhandles, he stands in one location and carries a cup in his hand and a sign that says, "Homeless Health Problems/ Need Help/ May The Good Lord/ Bless You All." Over the past year, whenever he has attempted to panhandle on Michigan Avenue, the police inevitably tell him that he cannot panhandle there. They say various things, such as "No begging on Michigan. Get out of here," or "You have to have a license to do that." In response, Plaintiff Young tells the police, "I have a right to petition on the city streets." In response to that, the cops often will then threaten to arrest him, telling him that they will take him to jail if he doesn't leave. At that point, to avoid arrest, he always leaves and moves to a side street off Michigan Avenue.

**William Johnson**

29. Plaintiff Johnson panhandles on a daily basis during rush hours in downtown Chicago, usually in two specific locations: one at the corner of Rush and Chestnut and the other on the public sidewalk in front of the Fourth Presbyterian Church of Chicago, on the 800 block of North Michigan Avenue. When he panhandles, he typically stands or sits with a sign in his hands that reads: "Homeless 'N' Hungry/ Please Help/ God Bless." On numerous occasions over the past year, when Johnson is panhandling on Michigan Avenue, various Chicago police officers have told him that he can't panhandle there, and some of the cops have threatened to arrest him, saying, "If I see you again, I will lock you up." When this occurs, he always leaves the area and moves to Rush Street and Chestnut. When he does panhandle on Michigan Avenue, he is always fearful and on the lookout for cops.

**Bonita Franks**

30. Plaintiff Franks has panhandled in various locations on the public walkways throughout Chicago, including on Michigan Avenue. She typically stands with a sign in her hands that reads: "Please Help I need a job ASAP/ I'm Bonita Franks and I'm great at:/ Customer Service or Sales/ Receptionist or Administration/ Resume Available/ Thank you for your support!" On at least two occasions over the past six months, Chicago police officers have told Franks that panhandling in any manner is impermissible on Michigan Avenue. First, in November 2011, she was peacefully panhandling on the public sidewalks near 701 North

Michigan, when a male Chicago Police Officer approached and told her to "put [the] sign away. You can't do that on Michigan Ave." He filled out a contact card to record the encounter. Second, in January 2012, on the southwest corner of Huron Street and Michigan Avenue, near scaffolding then located there, she was panhandling in her usual manner when a male police officer approached and told her, "Let me see your ID. You can't be on Michigan Ave." He filled out a contact card. He then left, warning her, "I'm not going to see you here anymore."

**SUPERVISORY RESPONSIBILITY**

31. The actions of the Chicago police officers described above were directed and/or authorized by Defendant commanders, watch commanders, district station supervisors, and other supervisory officers in the 18th District whose identities are currently unknown.

32. Plaintiffs' claim that the actions described above were directed and/or authorized by commanders, watch commanders or other supervisors is based on: (1) Defendant Nazario's statement to Plaintiff Pindak that "they" made panhandling on Michigan Avenue illegal; (2) Defendant Jane Doe describing removal of Plaintiff Hubbard from Michigan Avenue as part of a "mission;" (3) officers' statements to Plaintiff Pindak that "the sergeant" says that panhandling is illegal on Michigan Avenue; (4) Defendant Nazario's statement that panhandling is illegal in "tourist spots;" (5) the uniformity and consistency of the officers' actions in the 18th District in removing panhandlers from Michigan Avenue.

33. Defendant commanders, watch commanders, district station supervisors and/or other supervisory officers failed to stop the unconstitutional acts of the officers described above despite having actual knowledge of their actions.

34. Pursuant to Chicago Police Department Special Order S04-13-09, supervisors are required to review and approve all contact cards completed by police officers. As described above, police officers frequently fill out contact cards documenting their encounters with panhandlers. Therefore, the supervisors who review and approve these cards have knowledge that individuals are routinely being targeted, stopped and questioned merely for the lawful act of peaceful panhandling on Michigan Avenue.

35. Pursuant to Chicago Police Department Special Order S03-03-03, district station supervisors (formerly called watch commanders) are responsible for conducting roll calls, designating assignments to subordinates, reviewing and approving reports prepared by subordinates, and documenting all significant activities of subordinate officers. Moreover,

Special Order S03-03-03 states as follows: "District Station Supervisors are accountable for the enforcement of all laws and ordinances and the conduct ... of all on-duty subordinate personnel." Therefore, they have notice or should have notice of the activities of officers under their supervision.

36. Plaintiffs' supervisory liability claim is also premised on the City's longstanding and well documented history of harassing panhandlers and trying to ban them from selected areas, including the practices documented in: *Pindak v. City of Chicago*, 06 C 5679 (Millennium Park); *Hudson, et al. v. City of Chicago*, 05 C 5449 (bridges); *Pindak v. City of Chicago*, 10 C 6237 (Daley Plaza); and *Thompson et al. v. City of Chicago*, 01 C 6916 (arrests of panhandlers on Michigan Avenue pursuant to disorderly conduct statute).

**MUNICIPAL RESPONSIBILITY**

37. At all times material to this complaint, there existed in the City of Chicago the following practices, policies and customs

a. Unlawfully removing panhandlers from Michigan Avenue under threat of arrest;
b. Lying to panhandlers about their constitutional rights by falsely telling panhandlers that it is illegal to panhandle on Michigan Avenue;
c. Failure to adequately train police officers regarding the legal rights of panhandlers.
d. Failing to adequately monitor and intervene to stop the consistent and systematic interference with panhandlers' right to panhandle.

38. The actions of the Defendants described above were done pursuant to and as result of the above practices, policies and customs of the City of Chicago.

39. The Commander of the 18th District and the 18th District Watch Commanders are responsible for the customs, practices and policies alleged above. The City of Chicago has delegated *de facto* final policymaking authority to the 18th District Commander and watch commanders regarding the matters complained of herein. Specifically, according to Chicago Police Department Special Order S03-03-01, the District Commander is "accountable for addressing crime and disorder conditions in their assigned districts" and as such is the *de facto* policymaker for the district. According to Chicago police Special Order S03-03-03, District Station Supervisors (formerly referred to as Watch Commanders) are responsible for designating assignments to subordinates, directing the activities of subordinate officers,

implementing strategies for their district, and documenting occurrences in their respective districts. The City has established a chain of reporting responsibility through which watch commanders report to district commanders, who report to the deputy chief, who reports to the chief of police. Through this chain of reporting responsibility, the municipal policymakers, including the chief of police, are aware of or should be aware of the above-described policies, practices and customs.

40. The practices, policies and customs described above are widespread, permanent and well settled. They are known to or should be known to the municipal policymakers of the City of Chicago. The experiences of the individual Plaintiffs do not constitute isolated incidents. Rather, they are part of a larger pattern and practice that exists throughout the 18th District. The challenged policies and practices are so widespread and frequent as to constitute a custom and usage of the City of Chicago. The practices described above (removing panhandlers from Michigan Avenue under threat of arrest and false claims that panhandling is illegal) occur on a daily basis, have been occurring for years, and are carried out by numerous different police officers in the 18th District. The practice is so common that panhandlers know not to go to Michigan Avenue, because they know they will be threatened with arrest if they do.

41. The uniformity of Plaintiffs' stories reveals that the actions described above are being taken with the knowledge and acquiescence of municipal policymakers, including the 18th District commander and watch commanders. In each instance, officers do not arrest panhandlers—a practice the City acknowledged was illegal in *Thompson v. City of Chicago*, 01 C 6916—but rather simply threaten to arrest panhandlers and tell them (falsely) that panhandling is illegal on Michigan Avenue. Likewise, in each instance, officers do not claim to be enforcing the so-called "aggressive panhandling" ordinance (8-4-025), which restricts the manner in which individuals are permitted to panhandle, but rather tell Plaintiffs that panhandling anywhere on the Magnificent Mile is prohibited.

42. As described above, the City has a long history of interference with panhandlers' rights, see *Pindak v. City of Chicago*, 06 C 5679 (Millennium Park); *Hudson, et al. v. City of Chicago*, 05 C 5449 (bridges); *Pindak v. City of Chicago*, 10 C 6237 (Daley Plaza); and *Thompson et al. v. City of Chicago*, 01 C 6916 (arrests of panhandlers on Michigan Avenue pursuant to disorderly conduct statute).

43. The municipal policymakers acted with deliberate indifference to the rights of the members of the Plaintiff class by maintaining, overlooking and preserving the unconstitutional policies, practices and customs described above.

**CLASS ACTION ALLEGATIONS**

44. Pursuant to Federal Rule of Civil Procedure 23(b)(2), Plaintiffs will ask the Court to certify a Plaintiff class consisting of all persons who have been told they cannot panhandle on Michigan Avenue by members of the Chicago police department in the past two years.

45. The members of the class are so numerous as to render joinder impracticable. On information and belief, hundreds of people are affected by the complained-of policies and practices. These practices occur on a daily basis and are carried out by numerous police officers.

46. In addition, joinder is impracticable because, on information and belief, many members of the class are not aware that their constitutional rights have been violated and that they have the right to seek redress in court. Most members of the class are without the means to retain an attorney. There is no appropriate avenue for the protection of the class members' constitutional rights other than a class action.

47. The class members share a number of common questions of law and fact, including, but not limited to:

a. Whether the City of Chicago engages in a policy, practice or custom of falsely claiming that panhandling is illegal on Michigan Avenue and threatening to arrest panhandlers on Michigan Avenue;

b. Whether the City of Chicago fails to train officers regarding the constitutional rights of panhandlers to peaceably panhandle on public sidewalks.

c. Whether the City of Chicago fails to adequately monitor and intervene to stop the consistent and systematic interference with panhandlers' right to panhandle.

48. The claims of the named Plaintiffs are typical of those of the class. Each named Plaintiff has been subjected to the challenged policies and practices by virtue of his or her status as a panhandler who has sought to panhandle on Michigan Avenue.

49. The named Plaintiffs and class counsel will fairly and adequately represent the interests of the class. None of the named Plaintiffs has an interest in this case that is in conflict

with the interests of other class members. Class counsel has many years of experience litigating § 1983 cases, and in particular class actions seeking to vindicate First Amendment rights.

50. Class-wide declaratory and injunctive relief is appropriate under Rule 23(b)(2) because the Defendants have acted on grounds applicable to the class as a whole.

**COUNT I**
**42 U.S.C § 1983: First Amendment**
**Claim for Declaratory and Injunctive Relief Against**
**All Defendants on Behalf of the Plaintiff Class**

51. Plaintiffs and members of the class they seek to represent reallege paragraphs 1 – 50 as if fully set forth herein.

52. The City through its the Chicago Police Department has routinely told, and continues to tell, Plaintiffs and other individuals who panhandle on Michigan Avenue that panhandling there is illegal and that, if they continue to do so, they will be arrested, thereby intimidating panhandlers away from lawfully exercising their First Amendment rights and having a chilling and deterrent effect on their ability to exercise their First Amendment rights in the future.

53. The systematic lying by the Chicago Police is a content-based violation of the First Amendment to the United States Constitution and operates as a form of censorship and prior restraint on the freedoms provided by the First Amendment.

54. Plaintiffs plan to continue their efforts to peacefully and lawfully panhandle on Michigan Avenue.

55. The Plaintiffs and others whose constitutional rights are being interfered with by the Chicago Police on Michigan Avenue have no adequate remedy at law and will suffer irreparable harm to their constitutional rights unless Defendants are enjoined from continuing their policy and practice of lying to individuals about their legal right to panhandle on Michigan Avenue and threatening to arrest them if they do panhandle on Michigan Avenue.

WHEREFORE, Plaintiffs ask that this Honorable Court:

a. Enter a declaration that the Defendants' policies and practices of interference with and suppression of First Amendment activity by panhandlers on Michigan Avenue between Oak and Erie Streets, falsely claiming that panhandling is illegal

on Michigan Avenue and threatening to arrest panhandlers on Michigan Avenue; failing to train officers regarding the constitutional rights of panhandlers to peaceably panhandle on public sidewalks; and failing to adequately monitor and intervene to stop the consistent and systematic interference with panhandlers' right to panhandle violate the First Amendment to the United States Constitution;

b. Enter a preliminary and then a permanent injunction barring Defendants and their agents, servants, employees and attorneys from prohibiting panhandling activity on Michigan Avenue between Oak and Erie Streets, falsely claiming that panhandling is illegal on Michigan Avenue and threatening to arrest panhandlers on Michigan Avenue;

c. Enter judgment for reasonable attorney's fees and costs incurred in bringing this action; and

d. Grant Plaintiffs any and all other relief as law and justice demand.

**COUNT II**
**42 U.S.C § 1983: First Amendment**
**Claim for Money Damages on Behalf of Named Plaintiffs Against Defendant-Officers**

56. Plaintiffs reallege paragraphs 1 – 50 as if fully set forth herein.

57. As a direct and proximate result of the actions of Defendants Nazario, Bakopoulus, Wise, and the unknown officers identified as John Doe and Jane Doe described above, Plaintiffs Kim Pindak, John Hall, McArthur Hubbard, Lorenzo King, Robert Randol, Ronald Portis, Roger Young, William Johnson, and Bonita Franks have suffered monetary damages in the form of loss of income, as well as emotional trauma, physical discomfort, anguish, humiliation and insult.

58. The conduct of the individual Defendants described above was undertaken with malice, willfulness, and reckless indifference to the rights of Plaintiffs, thus entitling them to an award of punitive damages.

WHEREFORE, Plaintiffs Kim Pindak, John Hall, McArthur Hubbard, Lorenzo King, Robert Randol, Ronald Portis, Roger Young, William Johnson, and Bonita Franks ask that this Honorable Court:

a. Enter judgment against Defendant-Officers Nazario, Bakopoulus, Wise, and the unknown officers identified as John Doe and Jane Doe herein;
b. Award Plaintiffs compensatory and punitive damages as determined at trial;
c. Enter judgment for reasonable attorney's fees and costs incurred in bringing this action; and
d. Grant Plaintiffs any and all other relief as law and justice demand.

## COUNT III
## 42 U.S.C § 1983: *Monell* Claim Against the City of Chicago

59. Plaintiffs reallege all of the above paragraphs and counts as if fully set forth herein.

60. The misconduct described above was undertaken pursuant to the policy and practice of the City of Chicago through the Chicago Police Department in that:

a. As a matter of both policy and practice, the City of Chicago through its Police Department encourages, and is therefore the moving force behind, the very type of misconduct at issue here by directly ordering, supervising and condoning the interference and suppression of First Amendment activity by panhandlers on Michigan Avenue; and
b. As a matter of policy and practice, the City of Chicago through its Police Department is the moving force behind the very type of misconduct at issue here through its failure to adequately train and supervise its officers and/or its failure to adequately monitor and discipline its officers who violate the constitutional rights of panhandlers on Michigan Avenue by telling individuals that panhandling is illegal and threatening to arrest them if they continue to panhandle on Michigan Avenue;
c. As a matter of widespread practice so prevalent as to compromise municipal policy, officers of the Chicago Police Department abuse citizens in manner similar to that alleged by Plaintiffs and have done so for at least the past two years.

61. As a result of the above-described wrongful conduct, Plaintiffs have suffered monetary damages and mental anguish, including emotional distress.

WHEREFORE, Plaintiffs Kim Pindak, John Hall, McArthur Hubbard, Lorenzo King, Robert Randol, Ronald Portis, Roger Young, William Johnson, and Bonita Franks ask that this Honorable Court:

a. Enter judgment against Defendant City of Chicago;
b. Award Plaintiffs compensatory damages as determined at trial;
c. Enter judgment for reasonable attorney's fees and costs incurred in bringing this action; and
d. Grant Plaintiffs any and all other relief as law and justice demand.

**COUNT IV**
**42 U.S.C § 1983: Supervisory Liability Claim Against Unknown Commanders, Watch Commanders, and Other Supervisory Officers**

62. Plaintiffs reallege the above paragraphs and counts as if fully set forth herein.

63. The Defendant Commanders, Watch Commanders and other supervisory officers directed and/or authorized the unconstitutional actions described above.

64. The Defendant Commanders, Watch Commanders and other supervisory officers knew, or reasonably should have known, that their subordinates were engaging in the acts described above and that their conduct would deprive the plaintiffs of their First Amendment Rights;

65. The Defendant Watch Commanders failed to act to prevent their subordinates from engaging in such conduct.

WHEREFORE, Plaintiffs Kim Pindak, John Hall, McArthur Hubbard, Lorenzo King, Robert Randol, Ronald Portis, Roger Young, William Johnson, and Bonita Franks ask that this Honorable Court:

a. Enter judgment against Defendant Watch Commanders;
b. Award Plaintiffs compensatory damages as determined at trial;
c. Enter judgment for reasonable attorney's fees and costs incurred in bringing this action; and
d. Grant Plaintiffs any and all other relief as law and justice demand.

**Plaintiffs demand trial by jury.**

Respectfully submitted,

/s/ Mark G. Weinberg

/s/ Adele D. Nicholas
*Counsel for Plaintiffs*

Mark G. Weinberg
3612 N. Tripp Avenue
Chicago, IL 60641
(773) 283-3913

Adele D. Nicholas
4510 N. Paulina Street, 3E
Chicago, Illinois 60640
847-361-3869